Good morning and welcome to the Ninth Circuit. We are pleased to be here, pleased to have you here. We have read your briefs, your papers, the records, and we are looking forward to your arguments. The first case in the argument calendar, and I hope I'm pronouncing it properly, is Cook versus Lockyer et al. And Mr. Cook, you're here representing yourself and you also have an amicus pro bono lawyer with you. If you would like to argue on your own behalf for 10 minutes, which is the standard time, feel free. And then what we'll do is after you've had your full 10 minutes, which is the time allocated to your side, we'll let your other we'll let your lawyer speak a little bit to the extent that we think we need to hear in addition. But it's all yours. Yes. OK. I'm going to be taking stuff out here. Could I get three copies of this? It would be it would be much faster. I believe so far the appeal is in this case. And I'll just say I should give you a hint as to how this work. You've got a clock in front of you that has this digital clock that says 10 minutes. Look down right in front of you. It says 10 minutes. OK. Yeah. It comes down. I'm probably not going to use it. OK. However much you need. OK. All right. OK. So far the appeal is in this case have used for the offense cases involving contraband and fugitives. But there's another area of law that relates to the facts of this case. When government agents and officials are seeking information from individuals and it comes about unlawfully, it's not contraband information. The constant constitution prohibits taking evidentiary information and materials as described in these cases. Unlawfully also prohibits keeping the fruits of the government action. The cases above. You want me to read all these cases. We've read all the briefs. So we've pretty much read the cases. OK. The cases seem contrary to the legal theory that is being promoted by the appeal. In their February 27 2009 supplemental brief entitled Pearson versus Callahan. Let me ask you a question, if I could. You clearly objected when they sought to take the blood sample. I never volunteered. I never volunteered for. And I never on the request. I refused. That's why you were clearly saying I do not. I never complied. And what did you say to them? Did you say, listen, you've got a statute that allows you to take blood samples under certain circumstances. But my circumstance doesn't qualify. That is to say, my condition is not on the list. Yeah. So what did I say? This is not lawful. You can't take my blood. It's not it's not in the code. You got to read the code. I even gave him copies of the code. As a matter of fact, one of the hearings, the officer has written down that I gave him copies of the penal code. That's what three papers were. OK. And you were in on 242, 242 misdemeanor charge. You know, you don't want me to go through all the circumstances of the. No, no, no. I just want to know you in on a 242. Correct. And the statute that's happening, I push them away and charge me with a misdemeanor battery. So I went from there. So so they were clearly on notice at the time they took the blood that you objected. And they were on notice of the ground on which you objected. Correct. Yeah. And as I said in my brief, it happened at an earlier time at another facility. And the captain went through the penal code and he said, you can't take blood from that guy. I mean, it sent me back to my bunk. So apparently since that time in the in the brief, they've cited some other cases where this has happened. And I should know this, but I don't. In your lawsuit, are you seeking not only money, but are you also seeking to have the blood sample destroyed? Expunged the whole record taken out of there. It's unlawful. It was unlawfully obtained. There's no need for it. And the government has no use. Can't be allowed to keep it. This is right here. They're clearly not circuit cases. They're told to give it back. So you've asked to have either have it back or have it destroyed. Yes. Some some way that I'm sure there's a way to erase the record. I can't have the blood samples back. That'd be ridiculous. You know, I don't even know how long blood lasts. But all the information and everything that was taken abusively, unlawfully, they have no use for. They can't keep it. They don't need to keep it. Mr. Cook, you're a pretty good lawyer. Actually, you're better than some of the ones that are licensed that we see. But let me ask you this. Are you aware of any case in our circuit or elsewhere that is on what we say on all fours, meaning that even with the same factual situation you're talking about, that finds that what was done to you was unconstitutional? Yes, I put a. What would that be? Huh? What? That was versus San Diego was the case where they took blood, abusively took blood samples from a guy looking for contraband. OK, biological makeup is not contraband. I understand. But but but do you have a case that deals with your factual situation where you have somebody that's in jail on an on a misdemeanor charge and there's no statute authorizing it according to your theory of the case where the court has found that it is a violation of your constant of that person's constitutional rights? To search the blood? Yes. You know, there's cases where searching blood where Schmerber is one that that's a different factual situation. They're looking for contraband. They're still looking in the blood for information. OK, but do you do? There was a case in eastern Washington that is in the Ninth Circuit where they took a DNA abusively from a prisoner and his charge had been vacated that they were using to do it with. And he was objecting to it for a while. And after the charge was erased, you can find it in one of your cases. It's called. What was one of the first cases you had? Rise, I believe. I believe that mammoth referred to that case in one of his last briefs. Was it rise? Rise versus Oregon. Yeah. I think there was a footnote of an eastern Washington case where they took stuff from the guy. And there was a lawsuit on Eastern. Let me let me put it to you more. Let me let me put it to you very succinctly. I know you mentioned the Pierce versus Callahan case. One of the things that we're charged with in this kind of a case is to determine whether a matter was clearly established as a constitutional violation at the time that it occurs. If it is not, then the officer would be entitled to qualified immunity. So my question to you is, what case or cases would you cite that would establish the fact that at the time that this occurred, that there was clear law in the relevant jurisdiction that what they did to you was unconstitutional? How much time do I have? Well, hopefully that would have been done before. That's the issue in this case for all practical purposes. I believe that there are related cases in my earlier briefs. Right now, I don't have them in front of me. But you mentioned the Callahan case. Callahan case was a case where the officer knew that there was some kind of drug business going on. But Mr. Cook, as good as a lawyer as you are, can I steer you back to the main point? The reason why we refer to Pearson v. Callahan, the Supreme Court has basically said to us, you don't need to go through all these constitutional issues before deciding whether there's qualified immunity. If it's clear, there's a case called Saussure. You familiar with Saussure? No, I don't. It comes to Saussure, and that's what determines whether or not there's qualified immunity. If it's not clear that a constitutional violation occurs, that's all you really need to decide. You don't have to decide the earlier constitutional question. So from your perspective, it is critical that there be clear constitutional law that establishes that what was done was unconstitutional if you're going to be able to go directly against these individuals and they not have qualified immunity. So my question to you is, what case or cases clearly established at the time that this occurred to you that what they did without any statutory permission was unconstitutional? That's the key. Well, I don't think the statute has anything to do with it. Let's assume it does. But for whatever they wanted, what it had to do with it, the statute is a separate question. Let me say this. This case is actually fairly complex for reasons that have nothing to do with you and have everything to do with what the Supreme Court has given us when people sue various governments, including the state government. And Judge Smith is absolutely right. To the extent that you're suing a state individual officer for money, you not only have to show that what he did violated the Constitution, but it was at the time that he acted very clear that he violated the Constitution, which is why Judge Smith is asking you, okay, what law clearly establishes that? That's when you're after damages. So the extent that you're after money from these individual defendants, that's going to pose a genuine obstacle. I don't say how we're going to rule, but that's an obstacle. On the other hand, to the extent that you're not asking for money, but instead or perhaps in addition you're asking them to do something, for example, expunge the record and so on, that right does not have to be clearly established. There's no qualified immunity for that. So it may be easier to get that relief than it is to get money damages. That's the point of those questions. Well, I understand there's separate issues that are involved in both cases, and there's different plans, yes. Okay, your time's up. And if you have one last thing you want to say, please say it. Okay, thank you, Your Honor. I'd just like to hand these papers in. There's one for each of you. Thank you for your time. Have you given one to the state's attorney? I'll give one to him. Give one to him. Give one to the court clerk, and she can make copies for us at a later time. All right, there you are. Thank you very much. You're quite welcome. Thank you. That's Mr. Lenders. Isn't that how you pronounce it? Yes, Your Honor, it's Lenders. Why don't we start out with three minutes on the clock, and we'll just see how it goes. That sounds fine. Thank you. The Fourth Amendment makes clear that it is the arbitrary exercise of discretion that is the height of unreasonableness. That's the theme running throughout. I apologize for interrupting you so quickly, but because the pro se took most of the time, can I just get right back to the same question? Because as a trained lawyer, you'll know that's what we need to know. What case law authority or what statutory authority can you cite that indicates that aside from 242, which everybody seems to recognize doesn't give the right to do what they did, or rather 243, what state, what statute, what case says that what happened to Mr. Cook was unconstitutional and it was clearly established at the time that it occurred? Your Honor, I would reach that conclusion via two different paths. One path would be, for example, the Florida v. Wells case, where the Supreme Court said that an inventory search was unconstitutional because the police procedures governing that search did not allow closed containers to be open. Okay, but that's a contraband case, right? Well, Your Honor, that's a case in which there was no warrant, no probable cause, and no reasonable suspicion, and so the court turned to the only objective measure of the search's reasonableness. And I agree that a smart lawyer like you can get from point A to point B, but do you have a case where someone who was incarcerated is required by force to give a DNA sample without an authorizing statute? Is there a case that says that is unconstitutional? I have not found such a case, Your Honor. Okay, and if that's true, how do you satisfy the second prong of sauté? Of the qualified immunity analysis? Yes. You satisfy it because you turn to fundamental Fourth Amendment precepts, which are... But to do that, though, once you turn to that, then you take your, you've got a wonderful mind, you reason all these things, and over time, if there's a case that comes to say that because of the reasoning that you're coming up with, then eventually somebody would have that right because it's clearly established. But at the time that this occurred, is it not correct? There is no case right on point that says this is unconstitutional, and therefore you've got a problem with the second prong of sauté. I agree that at the time there was no case, none that I could find. Okay. I disagree that I have a problem under sauté, because I think the Court has made clear that you don't need a case directly on point before an officer can have, can be on notice that his conduct was constitutional. And I think here it's the fundamental Fourth Amendment precepts that made clear that without an authorizing statute under these circumstances, that conduct was unconstitutional. What is it, and I'll ask the indulgence of my colleagues, because we're well past the three minutes and we're going to keep going, because I think we do need to get back down to the constitutional principles, which I'm really not sure I have an understanding of your position. Where is it in federal constitutional law that the existence of a state statute becomes critical? As I began with, it's the arbitrary exercise of discretion that's the hallmark of unreasonableness under the Fourth Amendment. I want to stop you, and I'll let you go back and explain that better, but that sounds to me much more like a First Amendment kind of argument, focused on the discretion of the public official, where the chief of police shouldn't be able to decide for himself what parades are okay. I don't see any of that in a Fourth Amendment context. Fourth Amendment is a reasonableness weighing. So am I misunderstanding the argument you're making? I think you are. It's the reasonableness has to be viewed in light of these governing forces that allow us search. Would you like to address the Kincaid-von Bonk holding on that point? Because I think that gives us the test for DNA extraction from unwilling prisoners. Sure, Your Honor. It's a balancing test. And what do we balance? It's the prisoner's right of privacy against a legitimate governmental interest. Mr. Cook undoubtedly had a right of privacy in his blood, in his DNA. This Court in Reyes found that that privacy interest was minimal, but it exists nevertheless. On the other side, you have to have a legitimate governmental interest. Under the Fourth Amendment, often that legitimate governmental interest is found through probable cause, or through a warrant. In fact, the quintessential case under the Fourth Amendment is that of warrant issues. It's only an exception to the warrant requirements that the courts look to these other objective criteria of reasonableness. So generally, they turn to probable cause in the absence of a warrant, or even reasonable articulable suspicion in the absence of a warrant. But we do have procedures for identification. I mean, on the street, police officers are allowed to ask for identification, who are you, without a warrant. And when somebody's been arrested and being booked, there are certain procedures that are customary, and warrants never enter into it. So are we really looking at this? You talk about a warrantless search a lot, and certainly we've got certain defined exceptions, but I'm not sure where the warrant requirement fits into this. The warrant requirement is your sort of traditional Fourth Amendment search. In the absence of a warrant, courts look to other objective criteria governing a search of reasonableness. For example, probable cause. You're allowed to take a suspect's fingerprints at the police station upon arrest because you have probable cause to arrest them. You're allowed to ask a person's identity during a brief stop and frisk because you have reasonable articulable suspicion under Terry. These are objective criteria that the courts use to govern these searches and seizures. On this case, there are none of these things. There is no warrant. There is no probable cause. There is no reasonable articulable suspicion. Are you suggesting that under our case law, for someone who is in jail, that they have, insofar as identification is concerned, like fingerprinting and now DNA, that they have the same rights that people who are not incarcerated do? Absolutely not. Under RISE, this court has said that a prisoner's interest in his blood or his DNA is minimal, but it is there. Mr. Cook did have an interest, a privacy interest, in his DNA, a minimal. Does the state have an interest? As you very well know, there's an increased desire by federal and state governments to take DNA samples from virtually all prisoners now as a form of future identification, but it's generalized. Is that an unconstitutional act on their part? It is not unconstitutional to take DNA pursuant to authorizing statutes. However, if there is no objective standard set forth in advance, whether that be a warrant, probable cause, reasonable articulable suspicion, or in the absence of all of those things, some other objective standard by which to measure the reasonableness of the search, which is an authorizing statute. In the absence of such an authorizing statute, whereas here, the exercise of a search that was not authorized by the statute, and you could, I think, infer explicitly unauthorized by the California legislature, by their exclusion of 242, it is not constitutional. And what case says that? There is no case directly on point. Well, again, we get back to the fact that you're a bright lawyer, an able person. You're articulating something that you hope a court will adopt, but there isn't any court that has done that. There's no court that has adopted that, but I would say that. I hate to sound like a broken record. I read and reread the Kincaid-Enbach case having to do with taking of DNA blood samples in the parole setting, and it's very clear that the test that we set out is balancing of the interest of the person in his or her own privacy versus the articulated interest of the government. Well, here, it's the interest of Mr. Cook in his own bodily integrity and privacy as against the articulated interest of the state. Now, maybe I'm adding something when I say articulated interest instead of interest-free throwing, but if we assume, as I think I'm likely speaking only to myself, we assume that 243, which is named in the statute that was in effect at the time, authorizing by statute the taking of blood from an unconsenting prisoner, does not include 242. So taking blood from Mr. Cook was not authorized by the California statute at that time. It seems to me that it's hard for California to argue that it has a compelling interest when it's passed a statute authorizing the taking of blood in certain circumstances and has omitted from that statute any expressed interest or need of taking that blood. And therefore, under Kincade, which balances off the two kinds of privacy, I think the answer is, at least until the state can talk me out of it, that the state was not entitled to do it. Now, for me, again, I'll tip my hand. I'm not going to hide anything at all. I think the officers have qualified immunity. I mean, I do not think the law was so clear that they should have known and acted otherwise and they should be responsible for the damages. On the other hand, if I'm not talked out of it, my own view would be that he's entitled to an expungement or, you know, some order taking these things out of the state's hands because they were incorrectly taken. I've already taken too much of the Court's time, and I'll just briefly respond to your two points, Your Honor. Rather than articulated state's interest, I've reached the same conclusion through the term used in the case law, which is legitimate. In order to be a legitimate state interest, it has to be, as you said, articulated, you know, through an authorizing statute under these circumstances or in other circumstances through a warrant, probable cause, or reasonable articulable suspicion. As far as qualified immunity goes, at least for the two officers directly involved in Mr. Cook's hearing, at which he presented them evidence of that he was convicted under 242, gave them the statute, which 242 wasn't listed, I think a reasonable officer under those circumstances has been put on notice that there being no warrant, no probable cause, no reasonable articulable suspicion, there is no legitimate constitutional basis for them taking his blood. And therefore, I would think that at least for officers Moreno and Estrella, qualified immunity should not apply. Thank you. We took you well over your time. May it please the Court, Deputy Attorney General Steve Aronis, appearing on behalf of defendant and respondent prison officials. Your Honors, this Court should affirm the judgment in favor of my clients for three reasons. First, as the Court has noted, after Pearson v. Callahan, this Court can move directly to the second prong of the traditional qualified immunity analysis if the Court determines that there is no clearly established law informing my clients that taking Mr. Cook's DNA samples violated the Constitution. Can I just ask a quick question here? Judge Fletcher has mentioned the Kincaid decision, which of course dealt with the DNA Analysis Backlog Elimination Act of 2000 and the federal and federal crimes. Is it the position of the State that Kincaid governs our analysis here or is that limited to a different factional situation? I think Kincaid is certainly relevant as is RISE. But I think the holding in Kincaid, I don't read Kincaid as being limited to the federal statute. In other words, I don't read Kincaid as beginning with a federal statute and saying, a federal statute permitted this blood draw, ergo it does not offend the Fourth Amendment. Instead, I read Kincaid as saying the government has a compelling interest in collecting these samples. The privacy intrusion is no more minimal or no less minimal than rolling a fingerprint and therefore the balancing test comes out in favor of the government and therefore what the statute calls for is okay. So I don't think that Kincaid or RISE were driven by the existence of a statute announcing a State interest. Okay. And what's the State interest here? Well, first, may I just say, unless the Court is not willing to entertain the position that he had a qualifying offense, I would like to briefly make that argument to the Court. Don't we still have an injunctive relief action to deal with? And I'm not sure qualified immunity ends the case. Okay. Your Honor, we don't have an injunctive relief issue to deal with. And the reason for that is that Mr. Cook's standing to request the expungement or return of his sample, his standing evaporated on November 3rd of 2004 when the California voters passed Prop 69, which clarified and expanded the DNA Act to include all felonies. So even assuming that argument says, I'm not asking you to concede, but for purposes of my question, I want us to understand that on the assumption that his blood was taken from him unconstitutionally because at the time there was no California statute authorizing it and because at the time there was no California statute authorizing it, there was no articulated need and therefore no reasonable expectation on his part that this could happen to him, you're saying that a statute passed later could make constitutional what had been unconstitutional at the time of taking? Is that your argument? Your Honor, what I'm saying is if we are to assume, and I do not concede that he did not have a qualifying offense, but if we assume that he did. I'm not asking you to concede that. Okay. 296 contained a retroactivity provision. 296.1 said that if you're on parole at the time this law is passed and if you have an offense that is now clearly and categorically under the statute, then you are under a duty to provide the sample. Now, Mr. Cook remained on parole until July of 2005, nine months after the act was expanded and clarified. Therefore, he was under a statutory duty for nine months to provide his sample to California law enforcement officials because of the retroactivity provision. So he was under a statutory duty and therefore he lost standing to request the expungement or return of his sample. And for that reason I'm sorry to interrupt you again. And this may be my fault and I'll just put it right on the table. I've read an awful lot of stuff, so I might have missed it. Did you make that argument in your brief to us? I did, Your Honor. The issue of mootness is always before the court. I'm asking, did you make the argument about the retroactive application of the later statute? Yes, sir.  And in fact, I had a declaration from a case record specialist, and it hasn't been disputed or objected to, which showed that Mr. Cook remained on parole until July of 2005. And I also mentioned the retroactivity portion of the statute, 296.1, in that brief. So you're saying when he was in prison on the misdemeanor, he was still on parole from a felony? Is that what you're saying? No, Your Honor. And that's another thing. I really need to address that here. We are not talking about a misdemeanor battery. Okay. This was a felony battery. I urge the Court respectfully to take a look at the felony complaint at pages 352 and 353 of the excerpts of record. Okay. Let's assume for a moment, just to preserve your time, that it was a felony battery. You mentioned there's retroactivity on the part of Prop 69. At the time that Mr. Cook was in jail, what statute do you believe covered or indeed gave the State a right statutorily to take his DNA? Well, I'm not sure I'm making this quite clear, Your Honor. What I'm saying is that he was released a month after the sample was taken. Right. All right. So the sample was taken in August of 2003. So you're not contending that 69 applied at the time that the sample was taken? No. What I'm contending is the previous DNA version did include his offense, and I can briefly make that argument for the Court. But for purposes of injunctive relief, what I'm saying is even if he was entitled to the expungement, what happened was that after he was released in September of 2003 until July of 2005, almost two years later, he remained on parole. And during the intervening period in November of 2004, Prop 69 was passed. It said all felonies, no matter how unusual, all felonies qualify, even a civil rights-enhanced battery like we have here. It applies. And the retroactivity provision said if you're on parole and you have an offense that qualifies under the statute, you've got to provide your DNA. So Mr. Cook was in his ---- I've got to go back and read it, but you've got to provide it. That means you have to voluntarily come in, or the State has the ability to come to you and get it. Well, either or. But the point is this ---- Which one does it say? It places the burden on the convict. Both the old statute and the new statute place the burden on the convict to affirmatively provide it. That doesn't mean that parole officials couldn't go and take it. But in terms of the statutory ---- I guess I can read the statute myself, but I'd be surprised if the statute says you have to show up at the prison in order that this be done, rather than you have to provide it if they show up and ask for it. But I'll read it myself. Well, that's true, Your Honor. What would happen ---- you're correct, Judge Fletcher, that what would happen is that parole officials would go and they would take the sample if they didn't already have the sample. Now, the objection that Amica's counsel makes is, well, the State can't meet their burden to prove that the injunctive release has rendered moot because they can't prove that they would have taken his sample during that nine-month period. But we cannot be asked to prove something, a contingency that never came into existence. In other words, the sample was taken. And the sample was correctly taken when Mr. Cook was incarcerated on a felony battery. But, you know, if it wasn't taken, the duty would have been on Mr. Cook. And because the statute placed the duty on him, by operation of statute, he loses standing to request the expungement of the sample. Okay. I guess I really do have to read the statute to see what form that duty is phrased. Remember what part, what pages in your brief this is referred to. I need to refresh my recollection as well. This was in the October brief that I filed. And it would have been the final or second-to-final section. Was this ---- okay. Okay. This is the so-called supplemental answering brief? Yes, Your Honor. Well, you thought better of your earlier arguments? That is correct. I made a mistake. I made a mistake. But I found the correct answer and had a duty to provide it to the court. And one of the arguments that I made toward the end of that brief was that Mr. Cook's request for injunctive relief was rendered moot because of the retroactivity of the provision once it was passed. So because ---- had he been still in jail at the time that Prop 69 was passed, there would have been a clear right to take the sample. You're saying that even though there wasn't a statute, arguably, at that time, because you could have gotten it had he ---- because he was on parole for that, nonetheless the right is retroactive, therefore there's a mootness issue? Is that what you're saying? No, Your Honor. Respectfully, that's not exactly my argument. I'm treating the injunctive relief request separately from the question of whether or not he had a qualifying offense. I understand that. Now, moving from the injunctive relief issue that he has no standing to request after the passage of Prop 69, moving from that to the question of whether he had a qualifying offense, I agree with the court that we have to look at a statute as it existed in 2003. Absolutely. I'm not making a retroactivity argument there. What I'm saying is this. The civil rights enhancement, 422.7, which converted his battery from a misdemeanor to a felony, that enhancement had to enhance something. It had to enhance something. The question is, what was enhanced by the civil rights enhancement? And the answer is 243A. 242 merely defines what battery is. It says battery is the unlawful touching of another. It doesn't provide for any penalty. If we read 422.7, the civil rights enhancement, it says, this enhancement shall apply to an offense that is otherwise not punishable by imprisonment in a state prison. So in order to know whether we have an offense that's not punishable by imprisonment in a state prison, we have to look to 243A, which tells us that misdemeanor battery is not punishable by imprisonment in a state prison. Therefore, 422.7 had to enhance 243A. Well, that's an awfully long way around the barn to get to putting into the statute a section that's not there. Well, 243 is there, Your Honor. A felony under 243 is there. It is, but 242 is not. That's correct. But my argument is this. The abstract of judgment and the felony complaint are not the end of the analysis. They are the beginning. And traditionally, the State of California has viewed misdemeanor battery in conjunction with 242 and 243A. A misdemeanor battery cannot be understood by a trial judge in this State without reference to 243A, which provides for the misdemeanor punishment. And so if the civil rights enhancement did not enhance the misdemeanor punishment for battery under 243A, thereby converting it into a felony under 243, then what did it enhance? Amicus counsel has not identified any other punishment provision that could have been enhanced by the civil rights enhancement. So what happened here, it is complicated, I agree. And this is where, frankly, this is where Pierson v. Callahan comes in. We are talking about a complicated issue of State law. With respect to qualified immunity. It doesn't come in with respect to the injunctive relief. Well, that is true. And I'd like to take any further questions on injunctive relief because I don't think he's entitled to it. And I believe the Court can resolve this appeal fully by affirming the grant of qualified immunity. Let me ask you, we're over time, but I'm going to, I don't act until the light turns red, I guess, in this argument. Let me ask you, without requiring you to waive any of the other arguments, I really would like to hear your position with regard to what I think is a core here, which is assuming that the State statute at the time, before the amendment, did not cover the offense of conviction here. What significance does that have, in your view, as to whether there's a Federal constitutional violation? Thank you, Your Honor. I'd like to answer that question by quoting from Virginia v. Moore, a very brief quote. Last year, the Supreme Court said, it is not the province of the Fourth Amendment to enforce State law. And that's what we have here. We have a lawsuit where Mr. Cook is trying to use the Fourth Amendment to enforce what he perceives to be a violation of a State statute. That is not the province of the Fourth Amendment. Does he have a State law claim in this case? Or is there a California counterpart to 1983? Is there a cause of action under California law for a purported violation of this provision of State law? He may. Is there an action he could have? But if there is such an action, is that existing in this current lawsuit? It is not. And that's why I can't affirmatively answer that question. What I can answer the Court is that in Virginia v. Moore, the Supreme Court made clear that the Fourth Amendment is a separate, constant bulwark of protection against unreasonable searches and seizures, completely independent of what is going on in a State legislature at any point in time. Let me redress that, and then you can respond. I intend this to be part of the continuing conversation you're having with Judge Clifton. Virginia v. Moore is a probable cause case. And the question is, did the arresting officer have probable cause consistent with the Fourth Amendment? And the argument made by the defendant was, well, you don't have probable cause because State law protects me more than the Fourth Amendment would unassisted by State law. And the Court says what I think any second-year law student would say. Well, that's a different question. Probable cause is probable cause. That's determined simply by looking at the Constitution, and State law can protect under State law more if it wants to, but that doesn't affect whether or not there's probable cause. Virginia v. Moore is a two-plus-two-makes-four case. But there are lots of different things going on in the Fourth Amendment other than a probable cause determination. Here we have unreasonable search and seizure with the balancing test of Kincaid, and the balancing test of Kincaid explicitly says what's the legitimate governmental interest on one side and how do you decide what that legitimate governmental interest is. One of the ingredients, it seems to me at least, and I'm speaking only for myself, is what does the State say is its legitimate interest, and what expectations of privacy does the State thereby produce based on what it says? So I don't find Virginia v. Moore to answer the question. Very well, Your Honor. But I intend that to be — I don't mean to cut off the conversation with Judge Clifton. I want to just put that point in there as you answered Judge Clifton. And I agree, Your Honor. Virginia v. Moore did deal with a different kind of search or seizure. But I believe that the fundamental underpinning of that decision, the Court went back and looked at Cooper v. California, California v. Greenwood, and in those decisions what the Court said, one of them was a search of a person's garbage. There was no probable cause arrest fact scenario there. The other was a search of a seized vehicle not authorized by State law. And what the Court said is since 1967 at least, we have held that the Fourth Amendment is not tied to a State statute. And so the underpinning of the decision — the facts are not the same, absolutely correct. But the underpinning of that decision was that the Fourth Amendment analysis is not tied to a State statute. And the Court actually warned about the variance and unpredictability of law in the Fourth Amendment if we tie it to a statute. And that comes out here. If we say, for example, that California did not have a compelling interest to take the DNA from a convicted felon, a violent felony of battery, civil rights battery, in August of 2003, assuming that it didn't qualify under the statute, if we say that, but 15 months later after Prop 69 is passed and says all felonies, no matter how unusual, then what we have is Fourth Amendment law that is changed in a period of 15 months. And if we tie it to a statute, we'd have a different result in Hawaii versus California versus Washington. This is the danger that the Supreme Court warned against in Virginia versus Moore. What's going to happen is you're going to have officers with filled with trepidation and, you know, gee, what's the law now? What does it say now? We know what the Constitution says. We know what the cases say. We've gotten, you know, advice from the lawyers in our department. But what about this proposition over here in this State? You know, the Fourth Amendment is not intended — I mean, there we had a federal statute involved, and so it's not a Virginia versus Moore kind of situation. But I don't get the sense from reading the Kincaid opinion that the Federal DNA Act was considered irrelevant, and we don't think Congress has the right to move the line. So although it may not be determinative, is there — I mean, why isn't the State statute in some fashion relevant in the same way that Kincaid seemed to think that the Federal DNA statute was a factor to be considered? Well, the statute — again, my reading of Kincaid, and of course, you know, my understanding of Kincaid is that the Court took a look at the search in that case, weighed the interest, and then said the statute is okay. It wasn't a statute-driven decision. It was a federal statute, but I don't believe it was driven. There's three or four pages of discussion. Once they reach the point that the totality of the circumstances is the proper test, not special needs, they go on for about three pages. Let me put this in a different way, because if it were true for the DNA Act, as you are in effect saying it is for the proposition adopted in California or the statute that existed before, it just doesn't speak to Fourth Amendment issues. Fourth Amendment weighing is independent of the statute. Then there's really no point for Kincaid, because it doesn't matter whether the federal statute is constitutional or not. The Fourth Amendment weighing would still be the same. Well, the statute is relevant because the statute is part of the totality of the circumstances analysis, because the Court is looking at — I guess the Court is looking at what are the types of offenses that are being considered. But the Fourth Amendment is always there. One of the arguments that I saw in the amicus brief was if you don't tie this analysis to a state statute, then all of a sudden there's nothing to protect us from an arbitrary or capricious DNA draw. But that isn't true. The Fourth Amendment is still there. It still has to be a reasonable search. It still has to be a compelling state interest. The courts can still consider whether it was a misdemeanor offense or a felony offense, whether it was a violent felony or a nonviolent felony, et cetera. Let's take for a moment your hypothesis, following up on what Judge Clifton said. But put the — let's put the statute to the side, both the federal and the case of Kincaid, and in this case the state — relevant state statutes. What is the state's interest in taking Mr. Cook's blood? The state's interest is having a DNA sample from a person who committed a violent felony, a felony battery, so that in the future the state can accurately solve future crimes of violence and potentially expunge Mr. Cook if he's wrongly implicated. In Rise v. Oregon, the court said that — I'm assuming they're like — Exonerate. Exonerate. Oh, exonerate. Thank you. I misspoke. The point is, is that it cuts both ways. And the court said, look, it provides not only safety for the community, but also potentially justice for someone who's wrongfully convicted. Okay. So you're saying there is a generalized interest on the part of the state to take the DNA of all felons in prison. Is that an accurate statement? Violent felons, yes. Yes. Is that accurate, that violent felons? Is that articulated anywhere? Judge Fletcher is concerned under Kincaid, as he reads it, that it be articulated somewhere. I assume he means written down somewhere. Is there an articulated interest on the part of the state of California about taking the DNA of convicted violent felons for the purpose that you indicate? Well, after Prop 69 there is. It's in the new DNA Act. But, you know — Oh, so the fact that you say that Prop 69 is retroactive, does that fill in retroactively the missing link from Judge Fletcher's analysis under Kincaid? No. No. No. Again, I only use the retroactivity provision of Prop 69, the 296.1, to show the lack of injunctive relief, the mootness of injunctive relief. I don't use — You don't think that has anything to do with our analysis with respect to the initial claim out of the 1983 Act, 1983 claim? Well, I think it does go to the reasonableness in the sense that — and I did make this argument in my original brief, that if a California voter is held such a short time later, that all felonies of any kind are sufficient to counterbalance the minimal interest of the identifying information of an imprisoned felon, that that goes to what expectations of privacy society deems are reasonable. But the question I think Judge Clifton has, if I understand correctly, is that if we assume, and without conceding, if we assume that Mr. Cook did not have a qualifying offense in August of 2003, what is there to say that he — there was a compelling State interest? What I submit is that the State had the same interest in collecting the DNA sample from Mr. Cook that it had 15 months later when the DNA Act was expanded, and that is to properly solve — to prevent — discourage recidivism and accurately solve other crimes of violence. Yes, but if that argument is right, you don't need a statute at all. That is to say, six months after, a year and a half after blood is drawn, they pass a statute for felons, but if you're right, they had that interest even if there was no statute at the time they drew blood from him. No statute permitting blood drawn for somebody who's a 243 or anything else. Do you follow me? I do. I think at that point you're on — Do you actually make that — would you want to make that argument, that the State had just as strong an interest in the absence of any statute authorizing drawing of blood for DNA purposes? And the passage of the statute, that's just kind of the formality? Well, I wouldn't say it's a formality. What I would say is that the Fourth Amendment reasonable analysis would apply in that situation. And you'd still have the Fourth Amendment that would protect against unreasonable or arbitrary DNA draws in the absence of a statute. But in this case, we have a situation — I'd like to invite any further questions the Court may have about, first of all, that he had a felony battery, not a misdemeanor battery. The judgment in this case is contained at page 312 of the record. And under item number one, it says Mr. Koch was convicted of the following felony. And then it says PC-242. Now, it would have been cleaner — that's the judgment on page 312, Your Honor. 312 of what? Of the supplemental excerpts of record, the white volumes, Your Honor. Page 312, item number one. Got it. Okay. And it says convicted of the following felony. I don't question you. I just want to make sure I'm following along. Do you see the item number one? Yeah, I do. Code section number. Yeah. You're committed. Where does it say felony? Right above the part of the printed form. Oh, I got it. Okay. I'm with you. Okay. So please, this was not — respectfully, I've heard two questions using the word misdemeanor. This was not a misdemeanor battery. This was a felony battery that was enhanced. It says it right there. Yes. And it's also on the verdict form, and it's also on the felony complaint. This was a felony battery that was enhanced by the Civil Rights Enhancement from a 243A misdemeanor battery into a felony battery by operation of law under 243. Now, it would have been cleaner and clearer if the judgment and the charging document said 242-243A. That would have made this clearer. But this is a felony battery. And if the Civil Rights Enhancement did not enhance the punishment statute, 243A, then there's nothing else it could have enhanced because 242 is a definitional statute. So I apologize my briefing didn't make it clear. But this was a felony battery under 243. And I'd also like to point out that the argument that is made by Mika's counsel, that my clients should have been on notice, that Mr. Cook did not have a qualifying offense, that is rebutted by all of the documents in the record. There's a flow chart in evidence. The flow chart is at page 334. And the flow chart shows that case record services is the portion of the institution that is designated to decide whether somebody has a qualifying offense. Case records then gives you, if you follow the flow chart, case records gives the information to the medical staff, which gives it to investigative services. And after that, the guy's ducated. And then it's brought to the attention of custody staff. Given the time and effort that we've had to expend figuring out, it's probably safe to say that nobody could have been really confident. Apparently, there was an earlier correction officer and somebody higher up in the chain of command that understood that this violation wasn't covered. But frankly, it's a morass of facts. And individual correction officers are at the mercy of what he's trying to do. Well, let me just respond two ways to that very briefly. Number one, I object, and I objected in my brief to that comment from Mr. Cook. There's been no evidence admitted that some other correctional officer at some other prison was able to see his point. There's no evidence of that. That's just an allegation that he made. I can see his point. So my concern here in the end is that the person on the line is not going to be able to shuffle this very neatly because we can't shuffle it very neatly. Well, that's true. And we have a chart at page 340 through 342, which was provided by case record in dressed read and we had the file before it and then the late criminal    Cook had the same command, his point in holding him responsible for international services to Officer Estrella with 242 listed... If you're arguing the qualified immunity point, you're pushing on an open door. Okay. Well, but let me just say one thing about qualified immunity here that I think is important. After Pearson v. Callahan, the court does not need to decide the first prong. This case, I believe, is a... For purposes of qualified immunity, it does not. For purposes of injunctive relief, it might. It might. But, Your Honor, again, he is not entitled to injunctive relief the moment that statute changes... I heard the argument. Okay. So... You're 16, 17 minutes over time. If you have a summarizing paragraph, now's the time. Your Honor, respectfully, this is a case where qualified immunity is overwhelmingly deserving to my clients. After Pearson v. Callahan, this case is tailor-made for Pearson, the new rule in Pearson. We have a difficult matter of state law. We have a case where precedent is not needed because the statute's been clarified. The statute in question no longer exists. And for these reasons, the court should affirm judgment in favor of my clients by moving directly to the second prong of the test and affirming qualified immunity. Thank you. Okay. Thank you very much. Now, Mr. Cook, the customary thing is we let you go first. The State gets to say something, and you get a chance to respond. If you'd like one minute to respond, and we'll give your amicus counsel a moment to respond. If you're... Pardon me?  You have the podium. You don't have to. You said a lot. But your question earlier was that if there's any cases right on point where DNA was taken, if they were just police and guards were just taking DNA out of people without statutes and warrants, the other cases, then this whole thing wouldn't be going on now. It would already have been ruled illegal, I believe. So that's the only answer that I have to that question. Thank you. Okay. Thank you, Your Honor. And let's hear from the amicus lawyer, and then I think we can finally move on to the other cases. But I have to say, while we're over time, this is a hard case. And as you can see, the bench is enough interested in it and worried about the questions we're taking the time with. Thank you, Your Honor. I just have three brief points. In reference to Virginia v. Moore, State's counsel criticized our approach as varying based on state law. The Fourth Amendment does vary state to state in a very fundamental way, and that's through what states have defined as crimes. An arrest that could be valid in California because California defines battery as a crime would not be valid under the Fourth Amendment in Ohio, where Ohio does not define that battery as a crime. So to say that the Fourth Amendment is identical across all states betrays, I think, a fundamental misunderstanding. Second, as for the mootness argument, there's no – mootness is a very high burden, and there's no evidence in the record showing that Mr. Cook's blood necessarily would have been – or his DNA necessarily would have been taken after passage of Prop 69. I think we introduced some material showing that there are far more convicted felons on California streets than there are entries in the DNA database. This is evidence. I think that to find mootness in this case, to find that his injunctive relief claim is absolutely moot because his DNA necessarily would have been put back into the database upon the passage of Prop 69. Do you agree with the government's point that there's no need to reach the constitutional issue here because Prop 69 clarifies this issue going forward in California? No, because I think regardless of the passage of Prop 69, Mr. Cook's injunctive relief claim is not moot, and therefore the court must address the constitutional issue because he's seeking injunctive relief in this case. But if it – he's seeking injunctive relief with respect to him, but with respect to anybody else, wouldn't Prop 69 in effect vitiate that? It would vitiate that for convicted felons, but it's not impossible going forward that someone convicted of misdemeanor's blood would be taken and that this would be instructive precedent on that point. It's not – and finally, as to counsel's argument about Section 242 or Mr. Cook's conviction necessarily including a conviction under Section 243, counsel raised that for the first time in response to Amicus's opening brief. Mr. Cook litigated the case at the district court level on the assumption that the state had conceded that his – was not a qualifying offense under the DNA collection statute at the time when his DNA was taken. Is that in the record somewhere? Yes, Your Honor. And we – Where in the record is it conceded that that happened? Well, they conceded in their – in their supplemental brief, Your Honor, that they are taking a new position for the first time. Right. I know that. But, I mean, where in the record did they concede the point that you just made previously? That Mr. Cook litigated the case at the district court level? They conceded in their papers at the district court that Mr. Cook's was not a qualifying offense. Well, and they conceded in their first answering brief. Yes. They conceded in their first answering brief as well. So your supplemental brief where you say, whoops, I got a better thought. And so for that reason, because the court shouldn't even reach the issue, I think that Mr. Cook's conviction did not, as we laid out in our papers, include a conviction under 243. But the court should not even reach that issue, given that Mr. Cook litigated the case at the district court level and has – we have argued the case since based on that assumption. Thank you. Thank you very much. Well, thank you very much for giving us so much of your time. And thank you for those waiting for giving us so much of your time. A difficult, interesting case. Lots of issues. Mr. Cook, thank you very much for making your arguments. And also, Mr. Aronis and Mr. Lenders. That's all we have. That's it. It's free to go. Thank you. I have something else with me. Can I give her and she can give copies? You don't have to make any rulings. Why don't you give it to the clerk, and if we think it appropriate, we'll make sure that the state also has a copy. Okay. Thank you very much for your time. Appreciate it. Thank all of you. The case of Cook v. Correctional Officer Estrella et al. is now submitted. The next case on the argument calendar, Delgadillo-Garcia v. Holder.
judges: Fletcher W. , Fisher, Smith M.